# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MAURICE HALTIWANGER,<br><br>    Defendant. | No. CR07-4037-MWB<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S OBJECTION TO PLAINTIFF'S 851 NOTICE** |

_____

The defendant Maurice Haltiwanger is charged in a two-count indictment with conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and distribution, or aiding and abetting the distribution, of approximately 1.5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2. *See* Doc. No. 3. On January 6, 2009, the plaintiff (the "Government") filed a notice of its intent to seek enhanced penalties pursuant to 21 U.S.C. § 851, on the basis of Haltiwanger's prior conviction for what the Government deems to be a felony drug offense. *See* Doc. No. 71.

On February 3, 2009, Haltiwanger filed an objection pursuant to 21 U.S.C. § 851(c)(1) to the Government's notice of prior conviction (Doc. No. 80). Under the statute, when written objections are filed, the court "shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment." 21 U.S.C. § 851(c)(1). Accordingly, the court held a hearing on the objection on February 10, 2009. Assistant U.S. Attorney Shawn Wehde appeared on behalf of the plaintiff (the "Government"). The defendant Maurice Haltiwanger appeared in person with his attorney, Jim K. McGough. The court admitted into evidence the exhibits attached to the parties' briefs. No other evidence was offered, but oral argument was had on Haltiwanger's objection.

The matter now is fully submitted, and the court turns to consideration of Haltiwanger's objection.

In November 2001, Haltiwanger was convicted of failure to affix a drug tax stamp in violation of Kansas law.[1] *See* Kan. Stat. Ann. § 79-5204. The tax stamp violation was a "level 10 felony" under Kansas law. Kan. Stat. Ann. § 79-5208. On December 11, 2001, Haltiwanger was sentenced to one year of probation on the tax stamp charge. *See* Gov't Ex. 1, p. 4 (Doc. No. 82-3, p. 4). His probation later was revoked and he was sentenced to six months' imprisonment.[2] *See* Gov't Ex. 2, p. 2 (Doc. No. 82-3, p. 6).

Haltiwanger's sentence was determined based on mandatory Kansas Sentencing Guidelines. The crime for which Haltiwanger was convicted is classified under Kansas Law as a "nondrug crime" and a "felony." *See* Doc. No. 80-3, p. 1. Under the Kansas sentencing scheme, the "guidelines grid for nondrug crimes shall be applied in felony cases for crimes committed on or after July 1, 1993[.]" Kan. Stat. Ann. § 21-4704(a). The sentencing range for a level 10 felony under the Kansas guidelines was five to thirteen months, depending on the defendant's criminal history category. *See* Doc. No. 80-4, p. 1; Doc. No. 82-3, p. 9; *see United States v. Hill*, 539 F.3d 1213, 1215 (10th Cir. 2008) (explaining the Kansas sentencing structure and application of the two-dimensional sentencing guidelines chart; noting, in footnote 1, that "[a] separate grid is used for drug offenses" pursuant to Kan. Stat. Ann. § 21-4705).

Haltiwanger's criminal history placed him in Category I, making his sentencing range five to seven months. *Id.*; Doc. No. 80-3, p. 1. Based on this sentencing scheme,

---

[1] Haltiwanger also was convicted of unlawful possession of a firearm, but that conviction is not relevant to the present inquiry.

[2] The Government, in its brief, states Haltiwanger was sentenced to seven months' imprisonment following revocation of his probation. Gov't Ex. 2 indicates the prison term imposed was six months, to be served concurrently with Haltiwanger's ten-month sentence on the firearm charge. *See* Gov't Ex. 2, p. 2 (Doc. No. 82-3, p. 6).

Haltiwanger argues that because he could not have been sentenced to more than seven months' imprisonment, the offense does not qualify as a "prior conviction for a felony drug offense" for purposes of the federal sentence enhancement. Doc. No. 80.

At the time Haltiwanger was sentenced, upward departures were unconstitutional under Kansas law. *Hill*, 539 F.3d at 1215-16. Even if Haltiwanger had been sentenced after June 6, 2002, his maximum sentence could not have been increased "beyond the sentence established in the appropriate grid box" under Kan. Stat. § 21-4704 absent a factual determination, "made by a jury beyond a reasonable doubt," that the upward departure was warranted. *State v. Seibel*, 28 P.3d 445, 446-47 (Kan. Ct. App. 2001) (citing *State v. Gould*, 23 P.3d 801 (Kan. 2001), in turn relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)); *see Hill*, 539 F.3d at 1216. Therefore, the maximum sentence of imprisonment to which Haltiwanger could have been sentenced was, in fact, seven months.

To qualify as a prior felony drug offense for purposes of the federal sentence enhancement, the predicate offense must be "punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country. . . ." 21 U.S.C. § 802(44). Thus, at first blush, it would appear that Haltiwanger's Kansas conviction would not qualify as a prior felony drug offense for purposes of the enhancement. However, the Government notes the maximum possible sentence for *all* defendants was thirteen months, and the Government argues the offense therefore qualifies under section 802(44) as a prior felony drug offense.

There appears to be no Eighth Circuit precedent directly on point. Interpreting an Iowa drug tax stamp statute similar to the Kansas statute at issue here, Chief Judge Linda Reade held that a conviction under the Iowa statute constituted a felony drug offense for purposes of 21 U.S.C. §§ 841(b)(1)(B) and 851. *See United States v. Coleman*, 545 F. Supp. 2d 854 (N.D. Iowa 2008). However, Chief Judge Reade's analysis in *Coleman*

focused not on the length of the defendant's sentence for the prior crime, but on whether the Iowa statute prohibiting failure to affix a drug tax stamp prohibited "conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *Coleman*, 545 F. Supp. 2d at 855 (citing 21 U.S.C. § 802(44)). There was no question in the case that the defendant's prior conviction was an offense punishable by imprisonment for more than one year. *Id*. The Government's reliance on *United States v. Trevino-Rodriguez*, 994 F.2d 533 (8th Cir. 1993), is unavailing for similar reasons. Although *Trevino* involved the same Kansas drug tax stamp statute at issue here, the court did not analyze the length of the sentence for the predicate offense. Further, *Trevino* was decided before the current Kansas sentencing scheme was enacted. The *Trevino* court's focus was on whether violation of the Kansas statute -- at the time, an "unclassified felony" -- constituted "a prior felony drug offense within the meaning of § 841(b)(1)(A)." *Trevino*, 994 F.2d at 536.

The most instructive case for purposes of the present analysis appears to be *United States v. Hill*, 539 F.3d 1213, 1215 (10th Cir. 2008). In *Hill*, the court held the focus must be not on the sentence an individual defendant may receive based on his criminal history, but on the maximum statutory sentence for the crime. *Hill*, 539 F.3d at 1219-20 (citing, *inter alia*, *United States v. Rodriquez*, ___ U.S. ___, 128 S. Ct. 1783, 170 L. Ed. 2d 719 (2008)). "Focusing on the maximum sentence for the predicate crime of conviction is mandated by the Supreme Court's analysis in *Rodriquez*." *Hill*, 539 F.3d at 1220. The *Hill* court discussed decisions from other circuits analyzing sentence enhancements under a number of different statutes, and concluded the determination of whether a prior crime is punishable by more than one year's imprisonment must be determined by focusing on the maximum statutory sentence for the predicate crime of conviction. *Id*.

*Hill* involved a situation analogous to the one in the present case. The court found Hill had faced a maximum statutory sentence of less than one year for his Kansas

4

conviction. *Hill*, 539 F.3d at 1218. Although some defendants convicted of the same offense could have faced a sentence longer than one year, the court initially focused on Hill as an individual defendant, rather than on the maximum statutory sentence for the crime. Thus, in a prior opinion, the court held Hill's prior conviction did not qualify as a predicate offense for purposes of sentencing Hill as a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *See United States v. Hill*, 512 F.3d 1277 (10th Cir. 2008), *vacated by Hill*, 539 F.3d 1213 (10th Cir. 2008). The court granted the Government's motion to abate the proceedings pending the Supreme Court's decision in *Rodriquez*, and subsequently vacated its earlier opinion, holding that because the maximum term of imprisonment authorized under the Kansas statute exceeded one year, Hill's prior conviction qualified as a predicate offense for purposes of the sentence enhancement.[3]

Respectfully, the undersigned believes the *Hill* court read the Supreme Court's holding in *Rodriquez* too broadly. The *Rodriquez* Court *did*, in fact, focus on the sentencing characteristics of each particular defendant in one important respect; i.e., whether the defendant has prior convictions that would subject him to a stiffer penalty under a recidivism statute.

Rodriquez was convicted in 2004 in the United States District Court for the Eastern District of Washington for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He had three prior California convictions for residential burglaries. He also had three Washington convictions for delivery of a controlled substance. His three Washington convictions occurred on the same day, but involved three separate controlled substance deliveries. Under Washington law, Rodriquez faced a sentence of up to five years' imprisonment *if* his drug crime was a first offense. *See* Wash. Rev. Code §§69.50.408(a)(1)(ii)-(iv). However, for persons convicted of a second or subsequent

---

[3]Haltiwanger's reliance on *United States v. Plakio*, 433 F.3d 692 (10th Cir. 2005), is misplaced. In *Hill*, the court expressly held that its approach in *Plakio*, focusing on the individual defendant instead of the maximum sentence for the crime, was erroneous. *See Hill*, 5639 F.3d at 1218.

5

offense, the term of imprisonment could be doubled. *See* Wash. Rev. Code § 69.50.408(a). "Thus, by virtue of this latter, recidivist, provision [Rodriquez] faced a maximum penalty of imprisonment for 10 years." *Rodriquez*, 128 S. Ct. at 1786-87.

In the federal case, the Government moved to sentence Rodriquez to a minimum of fifteen years as a person with "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). The Court observed that under the ACCA, "a state drug-trafficking conviction qualifies as 'a serious drug offense' if 'a maximum term of imprisonment of ten years or more is prescribed by law' for the 'offense.'" *Rodriquez*, 128 S. Ct. at 1786 (citing 18 U.S.C. § 924(e)(2)(A)(ii)). The district court held Rodriquez's "drug trafficking convictions were not convictions for 'serious drug offense[s]' under the ACCA because the 'maximum term of imprisonment' for the purposes of § 924(e)(2)(A)(ii) is determined without reference to recidivist enhancements." *Rodriquez*, 128 S. Ct. at 1787 (citation omitted).

The Ninth Circuit agreed, but recognized a conflict among the Circuits on the issue. The Supreme Court grant certiorari to decide the question "whether the 'maximum term of imprisonment prescribed by law' is, as [Rodriquez] maintains and the Ninth Circuit held, the 5-year ceiling for first offenses or, as the Government contends, the 10-year ceiling for second or subsequent offenses." *Id.* (citing Wash. Rev. Code §§69.50.401(a)(ii)-(iv), 69.50.408(a)).

Rodriquez advanced two arguments in support of his contention that he was not subject to sentencing under the ACCA. Rodriquez's arguments and the Court's analysis of them are instructive in the present case:

> In an effort to defend the Ninth Circuit's decision, respondent offers both a textual argument and a related argument based on the "manifest purpose" of ACCA.

Respondent's textual argument is as follows. The term "offense" "generally is understood to describe the elements constituting the crime." Because prior convictions required for recidivist enhancement are not typically offense elements, they should not be considered part of the "offense" under the ACCA. Thus, the "maximum term of imprisonment prescribed by law" for the drug convictions at issue was the maximum term prescribed for simply committing the elements of the drug offense and was therefore five years.

Respondent's argument is not faithful to the statutory text. Respondent reads ACCA as referring to "the maximum term of imprisonment prescribed by law" for a defendant *with no prior convictions that trigger a recidivist enhancement*, [emphasis by the Court] but that is not what ACCA says. ACCA instead refers to "the maximum term of imprisonment prescribed by law" for "an offense," and, as previously explained, in this case, the maximum term prescribed by Washington law for each of respondent's two relevant offense was 10 years.

Respondent's argument based on ACCA's "manifest purpose" must also be rejected. Respondent argues that ACCA uses "the maximum penalty specified for the offense by state law as a short-hand means of identifying conduct deemed sufficiently 'serious' to trigger [the] mandatory penalty." According to respondent, "[t]he nature of [a defendant's] conduct, the elements of the offense, and the impact of the crime . . . are the characteristics that typically are used to gauge the 'seriousness' of an offense," and a defendant's 'status as a recidivist has no connection to whether the offense committed by the defendant was a 'serious' one."

This argument rests on the erroneous proposition that a defendant's prior record of convictions has no bearing on the seriousness of an offense. On the contrary, however, an offense committed by a repeat offender is often thought to reflect greater culpability and thus to merit greater punishment. Similarly, a second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of

> deterrence and incapacitation. *See Witte v. United States*, 515 U.S. 389, 403, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995); *Spencer v. Texas*, 385 U.S. 554, 570, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967) (Warren, C.J., dissenting in two judgment and concurring in one).
>
> ***If respondent were correct that a defendant's record of prior convictions has no bearing on the seriousness of an offense, then it would follow that any increased punishment imposed under a recidivist provision would not be based on the offense of conviction but on something else -- presumably the defendant's prior crimes or the defendant's "status as a recidivist."*** [Emphasis added.] But we have squarely rejected this understanding of recidivism statutes. In *Nichols v. United States*, 511 U.S. 738, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994), we explained that "'[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant.'" *Id.* at 747, 114 S. Ct. 1921 (quoting *Baldasar v. Illinois*, 446 U.S. 222, 232, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980) (Powell, J., dissenting)). When a defendant is given a higher sentence under a recidivism statute -- ***or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a sentence based on the defendant's criminal history -- 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's "status as a recidivist." The sentence "is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one."*** [Emphasis added.] *Gryger v. Burke*, 334 U.S. 728, 732, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948).

*Rodriquez*, 128 S. Ct. at 1788-89 (citations to the respondent's brief omitted).

Thus, the *Rodriquez* Court recognized that for purposes of recidivism statutes, a defendant's prior criminal history is directly relevant. The Court noted that "the ACCA is itself a recidivist statute." *Id.*, 128 S. Ct. at 1789. Similarly, the sentence enhancement provision of 21 U.S.C. § 841(b)(1)(C) also is a recidivist provision. A defendant's maximum sentence can be increased when, and if, the defendant has a previous felony drug

conviction "punishable by imprisonment for more than one year." 21 U.S.C. § 802(44)

The Kansas sentencing scheme also takes into account a defendant's prior criminal history in determining the maximum possible sentence for each defendant. The more prior convictions a defendant has, the higher the maximum sentence he may receive. In the present case, the tax stamp violation for which Haltiwanger was convicted carried a maximum sentence of five to thirteen months for *all* offenders. However, as the Government acknowledged at the hearing, the only way Haltiwanger could have been sentenced to thirteen months' imprisonment would have been if had three or more prior felonies involving offenses against persons. *See* Doc. No. 80-4, for Category A criminal history and a Level X felony. Instead, Haltiwanger's criminal history placed him in Category I, with an available sentencing range of only five to seven months.

In the statutory instructions accompanying the sentencing range table, Kansas law provides that "[t]he appropriate punishment for a felony conviction should depend on the severity of the crime of conviction when compared to all other crimes *and the offender's criminal history*." Kan. Stat. Ann. § 21-4704(d) (emphasis added). "Each grid block states the presumptive sentencing range for an offender whose crime of conviction and criminal history place such offender in that grid block." *Id.*, subsection (f). As noted previously, at the time Haltiwanger was sentenced, the Kansas courts had no authority to depart upward, even for compelling reasons. Thus, Haltiwanger's maximum possible sentence for the tax stamp violation was seven months. To argue that his conviction falls within the federal enhancement provision because, *if* he had fallen into a higher criminal history category, he *could have been* sentenced to a thirteen-month term, strains the statutory language beyond its limits.

Therefore, IT IS RESPECTFULLY RECOMMENDED that Haltiwanger's objection to the Government's 851 notice be sustained. Per the parties' agreement,

9

objections to this Report and Recommendation must be filed by **Monday, February 16, 2009**. Also per the parties' agreement, no written transcript of the hearing on Haltiwanger's objection is necessary, and the court may refer to the audio record of the oral arguments, if desired.

**IT IS SO ORDERED.**

**DATED** this 11th day of `February, 2009.

*[signature: Paul A. Zoss]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT